Jessica Rosen, SBN 294923
jrosen@lewitthackman.com
Lewitt, Hackman, Shapiro, Marshall & Harlan
16633 Ventura Boulevard, 11th Floor
Encino, California 91436-1865
Phone: (818) 990-2120; Fax: (818) 981-4764

Erin C. Johnsen, Esq. (*Pro hac vice* application to be filed)
GARNER, GINSBURG & JOHNSEN, P.A.
333 Washington Ave. N.
Suite 300
Minneapolis, MN 55401
ecjohnsen@garnerlegal.com
(612) 259-4800 (Telephone)
(612) 259-4810 (Facsimile)

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D'S GONE BATTY, INC., a California corporation; DAMARA ARSANIS, an individual; and DAX ARSANIS, an individual;<br><br>Plaintiffs,<br><br>v.<br><br>SPIRIT HALLOWEEN SUPERSTORES, LLC, a Delaware limited liability company;<br><br>Defendants. | Case No.<br><br>**COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs D's Gone Batty, Inc., Damara Arsanis, and Dax Arsanis (collectively, "Arsanis") by their attorneys, for their complaint against Defendant Spirit Halloween Superstores LLC ("Spirit") allege and aver as follows:

## **BACKGROUND**

1. This is an action by a former operator of a Spirit Halloween business against Spirit for violation of the California Franchise Relations Act. In brief, Defendant entered into consignment agreements with Arsanis, pursuant to which Arsanis leased and outfitted spaces for seasonal Spirit

1    Halloween retail businesses, invested substantial amounts of money into operating the businesses,
2    and created goodwill for the Spirit Halloween name in their territories, over a period of more than
3    two decades. Although Defendant purported to structure the parties' relationship as a
4    "consignment" relationship," in fact it was a franchise relationship.

5        2.   Despite Arsanis being a strong performer within the Spirit Halloween system, Spirit
6    unilaterally terminated the parties' agreement. Spirit was clear that it was terminating the
7    relationship in order to take back Arsanis's markets for itself or other operators, because this would
8    be more profitable for Spirit. Spirit's termination of Arsanis was conducted in violation of
9    California franchise law, which requires prior notice, good cause for termination and an opportunity
10   to cure, none of which were provided to Arsanis.

## JURISDICTION AND VENUE

    3.   This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds $75,000 exclusive of interest and costs.

    4.   Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial number of the acts and transactions giving rise to the claims herein occurred within this district.

    5.   This Court has personal jurisdiction over Spirit by reason of Spirit's transaction of business within the state, both by transacting business with Arsanis for more than 25 years and by operating its own Spirit Halloween stores within the State.

## PARTIES

    6.   Damara Arsanis is a citizen and resident of Stockton, California.

    7.   Dax Arsanis is a citizen and resident of Stockton, California.

    8.   D's Gone Batty, Inc. is a California corporation with its principal place of business in Santa Cruz, California. Damara Arsanis and Dax Arsanis are the sole shareholders of D's Gone Batty, Inc. D's Gone Batty, Inc. has, since 1997, operated Spirit Halloween stores in numerous locations during each Halloween season.

    9.   Spirit Halloween Superstores, LLC is a Delaware limited liability company, with its principal place of business in Egg Harbor Township, New Jersey. Spirit is wholly owned by Spencer

Spirit IH LLC, a Delaware limited liability company, which is in turn wholly owned by Spencer Spirit Holdings, Inc, a Delaware Corporation with its principal place of business in Egg Harbor Township, New Jersey.

**FACTS**

10. Dax and Damara Arsanis were first introduced to Spirit when their father opened the 15th Spirit Halloween store in the United States in Stockton, CA in 1990. Dax began working for his father's store at age 14.

11. In 1997, Dax and Damara decided to follow in their father's footsteps and opened their first Spirit location in Vallejo, CA. When Arsanis entered into their business relationship with Spirit, they signed an agreement styled as a "consignment agreement." In order to become a consignment operator, Arsanis had to pay a security deposit to Spirit for the right to operate in their territories.

12. Pursuant to the consignment agreements with Spirit, Arsanis operated retail stores each year under the "Spirit Halloween" marks during the Halloween season. Under the Spirit model, the businesses did not necessarily operate from the same location every season—because these were not year-round businesses, and instead operated under a pop-up model. Each year Arsanis would identify, build out (if necessary), and outfit locations for each territory only for the Halloween season.

13. In recent years, Arsanis continuously operated in three territories, Tracy California (2000-2022), Manteca California (2009-2022), and Yuba City California (2012-2022).

14. Spirit had significant say over all aspects of Arsanis's business—from location selection and approval, to advertising and marketing, to merchandise sold, to the layout of the stores—Arsanis was required to comply at all times with Spirit's system and specifications.

15. Spirit provided each year's merchandise to Arsanis on a consignment basis, with unsold merchandise being returned to Spirit at the end of each season. At the end of each season, an inventory of unsold merchandise was conducted by Arsanis and an independent inventory service selected by Spirit.

16. During the course of their relationship, Arsanis also paid mark ups and "service fees"

to Spirit on required expenditures such as freight, signage, fixtures, rent, and in-store experiences.

17. Throughout their relationship, Arsanis expended significant time and money to build recognition and goodwill associated with the Spirit Halloween brand. As a result of these efforts, Arsanis's stores performed very well—in 2021, one of Arsanis's stores surpassed $1 million in sales. For hitting this milestone, Spirit awarded Dax and Damara Arsanis each with orange blazers—these was used as symbols for successful operators, and Spirit made a show of praising those operators receiving orange blazers at its annual conference each year. Arsanis also received several awards throughout the years from Spirit including "Highest Increase in Sales" in multiple years, "Highest Increase in Transaction Count" in multiple years, and "Spirit of Children" awards for their donation amounts per store to their local children's hospitals.

18. Prior to the 2022 season, Spirit encouraged Arsanis to purchase snap wall fixtures, which they did for $37,500 for the 2022 season.

19. After the 2022 season completed, Arsanis began usual preparations for the 2023 season. To store all their fixtures between the 2022 and 2023 seasons, Arsanis entered into three storage facility contracts.

20. On January 12, 2023, less than 30 days before the end of their consignment agreement year, Spirit sent a termination letter to Arsanis stating simply that "Spirit has elected not to offer you a Consignment Contract for Spirit store locations for the 2023 Spirit season." Spirit did not claim to have any cause for terminating the agreement with Arsanis and did not provide them with an opportunity to sell the business.

21. Anne Sullivan, Senior Director of Operations at Spirit, also called Arsanis to inform them of the termination. During this call, Ms. Sullivan said that the decision to terminate had nothing to do with performance, was nothing personal, and had only to do with numbers and logistics.

22. As a result of their termination, Arsanis only ended up using the expensive snap wall fixtures for one season and Spirit refused to buy them back.

23. For the 2023 Halloween season, Spirit opened its own stores in several of Arsanis's former locations including Tracy, California and Manteca, California. Additionally, Spirit awarded

the Yuba City, California territory to another consignment operator.

24.	After consulting with counsel, Arsanis learned that their consignment relationship with Spirit constituted a franchise relationship under the California Franchise Relations Act.

25.	As a result of the Defendants' termination, Arsanis has lost the value of their business, an amount in excess of $3.2 million.

## CLAIM ONE

### (Violation of the California Franchise Relations Act (Termination))

26.	Arsanis repeats and realleges all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

27.	The arrangement between Arsanis and Spirit was a "franchise" as that term is defined in the California Franchise Relations Act ("CFRA"), CAL. BUS. & PROF. CODE § 20001.

28.	The CFRA defines "Franchise" as: "a contract or agreement, either expressed or implied, whether oral or written, between two or more persons by which: (a) A franchisee is granted the right to engage in the business of offering, selling or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor; and (b) The operation of the franchisee's business pursuant to that plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate; and (c) The franchisee is required to pay, directly or indirectly, a franchise fee." Cal. Bus. & Prof. Code § 20001.

29.	Arsanis's relationship with Spirit satisfies the definition of a franchise because Arsanis: a) operated their businesses pursuant to the requirements of Spirit, who prescribed details such as location, advertising and marketing, specific merchandise sold, and store layout therefore satisfying the requirement that the franchisee operate pursuant to the franchisor's marketing plan or system; b) was granted a license, pursuant to their consignment agreement, to operate under the "Spirit Halloween" marks satisfying the trademark license requirement; and c) paid a deposit, mark ups, and "service fees" to Spirit on required expenditures such as freight, signage, fixtures, rent, and in-store experiences that qualify as franchise fees for the purposes of the CFRA.

30.	Arsanis is a California resident and their Spirit locations were in California. As such,

the California Franchise Relations Act applies to their relationship with Spirit. The CFRA prohibits termination or nonrenewal absent good cause.

31. In violation of the CFRA, Spirit terminated Arsanis's franchise without cause. In fact, Spirit was forthright that the termination of Arsanis's agreement was not for cause but merely for Spirit's own convenience and profitability.

32. As a result of Spirit's violation of the CFRA, Arsanis is entitled to recover the fair market value of the franchised business and franchise assets and any other damages caused by Spirit's termination.

## CLAIM TWO

**(Violation of the California Franchise Relations Act (Non-renewal))**

33. Arsanis repeats and realleges all of the allegations set forth in the preceding paragraphs as though fully set forth herein.

34. As outlined more fully above, the arrangement between Arsanis and Spirit was a "franchise" as that term is defined in the California Franchise Relations Act ("CFRA"), CAL. BUS. & PROF. CODE § 20001.

35. Arsanis are a California residents and their Spirit locations were in California. As such, the California Franchise Relations Act applies to their relationship with Spirit.

36. To the extent that the termination of Arsanis's franchise can be considered a non-renewal, Spirit violated the CFRA by failing to renew Arsanis's franchise without first providing at least 180 days prior written notice of its intention not to renew and giving Arsanis the opportunity during that time to sell their business to a purchaser.

37. As a result of Spirit's violation of the CFRA, Arsanis is entitled to recover the fair market value of the franchised business and franchise assets and any other damages caused by Spirit's unlawful non-renewal.

## CLAIM THREE

**(Unfair, Unlawful, and Fraudulent Business Practices**

**Violations of Cal. Bus. & Prof. Code §17200, *et seq.*)**

38. Arsanis repeats and realleges all of the allegations set forth above as though fully set

forth herein.

39. Spirit's acts are a continuing and ongoing unfair, unlawful, and/or fraudulent activity prohibited by the Unfair Competition Law ("UCL") and justify injunctive relief, restitution, and other equitable relief pursuant to Cal. Bus. & Prof. Code § 17203.

40. The UCL provides: "Unfair competition shall mean and include unlawful, unfair, or fraudulent business practices and unfair, deceptive, untrue or misleading advertising…"

41. Spirit exploited its position of power over Arsanis to commit the acts and misconduct alleged above, which are unfair, unlawful, and/or fraudulent business acts and practices within the meaning of California Business and Professions Code §§ 17200 *et seq.*, including violations of CFRA (Cal. Bus. & Prof. Code § 20001 *et seq.*).

42. As a result, Arsanis suffered damages and continues to incur costs and fees associated with Spirit's unfair, unlawful, and/or fraudulent business practices.

43. Spirit's course of conduct, act(s), and practice(s) constitute separate and independent unfair, unlawful, and/or fraudulent business practices and violations of Cal. Bus. and Prof. Code § 17200 et seq.

44. Pursuant to Cal. Bus. and Prof. Code § 17200, et seq., Spirit and all persons in concert with Spirt should be enjoined and restrained, temporarily, preliminarily and permanently, prohibitorily and mandatorily from engaging in all forms of unfair, unlawful, and/or fraudulent business acts and practices, including violations of CFRA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray this Court

1. Grant the Plaintiffs' damages in an amount to be determined at trial but in no event less than $3,200,000 plus interest, costs, and attorneys' fees.

2. Enjoin and restrain Defendant Spirit Halloween Superstores, LLC, preliminarily and permanently, prohibitorily and mandatorily from engaging in all forms of unfair, unlawful, and/or fraudulent business acts and practices, including violations of CFRA.

/ / /

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury as to all issues.

Dated: January 22, 2025

GARNER, GINSBURG & JOHNSEN, P.A.

Erin C. Johnsen

&

LEWITT, HACKMAN, SHAPIRO, MARSHALL & HARLAN

By:   /s/   Jessica W. Rosen
      Jessica W. Rosen
      Heidy Nurinda

      Attorneys for Pension Systems Corp. & James Gilbert